IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

WESLEY VAUGHN,                      )
                                    )
            Plaintiff,              )          9: 02-CV-1512
                                    )
        v.                          )
                                    )
JAMES A. NICHOLS, Deputy            )      MEMORANDUM OPINION
Superintendent of Programs          )
(Mid-State); GLENN S. GOORD,        )
Commissioner (D.O.C.S.);            )
ROBERT PROSSER, Maintenance         )
Supervisor (MID-STATE); MR.         )
ABBIS, Vocational Supervisor        )
(Mid-State); WILFREDO BATISTA,)
First Deputy Superintendent         )
(Mid-State); DONALD SELSKY,         )
Director of Special Housing/        )
Inmate Disciplinary Programs        )
(D.O.C.S.); in their                )
individual capacities as            )
personnel of the Department         )
of Correctional Services            )
(D.O.C.S),                          )
                                    )
            Defendants.             )
_____)


                    I.  INTRODUCTION

            This matter is before the Court on an order from the

United States Court of Appeals for the Second Circuit remanding

the case to this Court for reconsideration of the issue of

whether plaintiff Wesley Vaughn ("Vaughn") was afforded adequate

due process protection at a prison disciplinary hearing (Filing

No. 100).  The Court ordered the parties to submit additional

materials in support of their respective positions (Filing No.

101).  Vaughn submitted an additional brief (Filing No. 102), and

the defendants submitted a letter (Filing No. 103) referring the Court to the arguments the defendants made in their brief supporting their original motion for summary judgment (Filing No. 25).  Upon reviewing the parties' briefs on remand, the briefs submitted with the original summary judgment motion, the evidentiary submissions, and the relevant law, the Court finds summary judgment in favor of the defendants is appropriate on the due process issue.

## II.   BACKGROUND

### A.   Material Facts for the Motion for Summary Judgment

For eight years, Vaughn worked as an inmate law clerk in the law library of five different correctional facilities until his removal in April 2002.  In late March 2002, Vaughn provided legal assistance to a fellow inmate, Banks, in preparation for a hearing with defendant James A Nichols ("Nichols"), who was the hearing officer (the "HO").  Afterwards, Nichols approached Vaughn and commented on the quality and quantity of Vaughn's legal assistance to Banks.  Nichols told Vaughn that Nichols had distributed copies of materials Vaughn had prepared for the Banks hearing to the Crisis Intervention

Unit (the "CIU").[1]  Nichols also told Vaughn to "watch his back,"
as penal officers were critical of Vaughn's effective legal
assistance to inmates and CIU members were threatening to "set
up" Vaughn.

Thereafter, Nichols notified Vaughn that Vaughn was
being transferred to the alcohol and substance abuse treatment
program, which would result in Vaughn losing his law clerk
position.  Not wanting to leave his law clerk position, Vaughn
began contacting penal officers by letter and filed several
grievances expressing his wish to remain in his law clerk
position and not be transferred to other programs and jobs.

On May 28, 2002, defendant Daniel Abbis ("Abbis")
issued to Vaughn a misbehavior report ("MR") charging Vaughn with
violent conduct.  The charges were based upon statements from
confidential informants and alleged that Vaughn had attacked and
injured inmate Deleon.  A tier hearing was subsequently held on
June 3, 2002.  Defendant Robert Prosser ("HO Prosser") served as
the HO for the tier hearing.  Prior to the tier hearing, Vaughn
requested several document he thought would be relevant to the

---

[1] The CIU is sometimes referred to throughout the record as
"CERT."  For consistency, all references in this memorandum will
be to CIU.

-3-

hearing, but HO Prosser determined these requested documents had never existed.  Vaughn also complained at the tier hearing that he had not received a copy of the medical report disclosing Deleon's injuries.  The prison nurse, however, did testify at the tier hearing regarding Deleon's injuries.  The nurse stated Deleon's medical report noted that Deleon said his injuries occurred as a result of his falling in the shower.  However, the nurse also disclosed that she questioned whether Deleon's injuries resulted from a fall in the shower and that Deleon's injuries could plausibly have resulted from a fight.

In addition to the prison nurse, HO Prosser heard testimony from five other witnesses, including some witnesses Vaughn called to testify in his defense.  HO Prosser allowed Vaughn to call two inmate witnesses at the tier hearing, inmates Mendoza and Dumas, who testified that Vaughn was not present at the time of the incident.  Mendoza testified that Deleon had slipped and fallen in the bathroom, which had caused Deleon's injuries.

Abbis also testified at the tier hearing.  Abbis stated the confidential informants he had relied upon in issuing Vaughn's MR were "100% reliable in the past."  Vaughn inquired of Abbis regarding whether Abbis was a member of the CIU.  HO

-4-

Prosser stated that question was irrelevant, but Abbis answered
that he was not a CIU member.  Also during Abbis' testimony,
Vaughn complained that Abbis was not properly answering
questions.  In response to this, HO Prosser stated to Vaughn,
"we're gonna run the hearing," presumably referring to himself
and Abbis.

HO Prosser refused to allow Vaughn to call two other
inmate witnesses, Robinson and "The Fag in the Dorm" (a.k.a.
"Freeman").[2]  Robinson and Freeman, Vaughn contended, would have
testified about the efforts of penal officers to pressure them
into implicating Vaughn in the Deleon incident.

Vaughn also made an argument at the hearing that HO
Prosser was biased.  HO Prosser stated that he was not biased and
that he would make his decision based upon the evidence.

Ultimately, HO Prosser found Vaughn guilty of the
attacking Deleon.  HO Prosser relied on the following information
in making his disposition: the confidential informants'
statements to Abbis, Abbis' testimony, dorm sign-out sheets
showing the confidential informants were present when the

---

[2] At Vaughn's tier hearing, Vaughn identified Freeman by the
moniker used above.  Only subsequently, in his brief on remand,
did Vaughn identify this person as Freeman.

-5-

incident occurred, testimony from Nichols stating Vaughn was not in the law library at the time of the incident, law library logs indicating Vaughn was not in the library at the time of the attack, documents from the housing unit where the incident occurred that indicating Vaughn was present in the housing unit at the time of the incident, and medical testimony from the prison nurse regarding Deleon's injuries.

After HO Prosser's determination at the tier hearing, Vaughn submitted an appeal to Donald Selsky ("Selsky"). Selsky affirmed HO Prosser's determination, which resulted in Vaughn spending 180 days in the Special Housing Unit.

**B.   Procedural History**

Vaughn filed his amended complaint on January 2, 2003, in which he claimed various penal officials had unconstitutionally retaliated against him (Counts I & II), the penal officials had deprived him of due process of law under the Fourteenth Amendment at his Tier hearing (Count III), and the penal officials had denied him equal protection of law under the Fourteenth Amendment (Count IV) (Filing No. 5). The defendants moved for summary judgment on all of Vaughn's claims on May 28, 2004 (Filing No. 25). On November 8, 2004, the Court granted in part the defendants' motion for summary judgment, dismissing

-6-

Counts III (due process) and IV (equal protection).  The Court,
however, denied the motion with respect to Vaughn's retaliation
claims (Filing No. 31).  Vaughn filed a motion to reconsider the
Court's determination on the due process claim (Filing No. 34),
which the Court denied (Filing No. 42).

Thereafter, the case proceeded to trial for
determination of Vaughn's retaliation claims.  On August 23,
2007, the jury returned a verdict finding defendants Wilfredo
Batista ("Batista"), Nichols, and Abbis[3] had not violated
Vaughn's constitutional rights by retaliating against Vaughn.
Thereafter, the Court entered judgment in favor of Batista,
Nichols, and Abbis.

On September 24, 2007, Vaughn filed a notice of appeal.
On March 12, 2009, the Court of Appeals for the Second Circuit
issued a mandate remanding the case to this Court "to reconsider
[the defendants'] motion for summary judgment asserting that
Vaughn was afforded adequate due process at his disciplinary
hearing" (Filing No. 100).

### III.  STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure

---

[3] By the time of the trial, Batista, Nichols, and Abbis were
the only remaining defendants in the case.

provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009).  Summary judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A fact is material only when its resolution affects the outcome of the case.  *Anderson,* 477 U.S. at 248; *Warshawsky*, 559 F.3d at 137.  A material issue is genuine if it has any real basis in the record.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986).

On a motion for summary judgment, the Court must view all evidence and reasonable inferences in the light most favorable to the nonmoving party.  *Anderson,* 477 U.S. at 250. However, the nonmoving party may not rest on the mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).  The nonmoving parties "'must do more than simply show that there is some metaphysical doubt as

-8-

to the material facts.'"  *Jeffreys v. City of New York*, 426 F.3d

549, 554 (2d Cir. 2005) (quoting *Matsushita*, 475 U.S. at 586).

## IV.  DISCUSSION

The Fourteenth Amendment to the U.S. Constitution

provides "[n]o State shall . . . deprive any person of life,

liberty, or property, without due process of law."  U.S. Const.

amend. XIV, § 1.  The Supreme Court has held a disciplinary

hearing for a prison inmate implicates the due process clause if

the hearing results in the imposition of an atypical hardship

upon the inmate.  *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004);

*see Superintendent v. Hill*, 472 U.S. 445, 454 (1985); *Wolff v.*

*McDonnell*, 418 U.S. 539, 563-64 (1974).

Although not entitled to the "full panoply of rights"

afforded by the due process clause, *Sira*, 380 F.3d at 69, the due

process clause does give inmates several procedural safeguards at

prison disciplinary hearing.  These safeguards include:

> 1.   An advance written notice of the
>      charges against the inmate (*Wolff*);
> 2.   A hearing affording the inmate a
>      reasonable opportunity to call
>      witnesses and present documentary
>      evidence (*Wolff*);
> 3.   A fair and impartial hearing
>      officer (*Wolff*); and
> 4.   A determination supported by "some
>      evidence" (*Hill*); and

-9-

                    5.    A written statement of disposition,
                          including the evidence relied upon
                          and the reasons for the
                          disciplinary actions taken (*Wolff*).

*Sira*, 380 F.3d at 69 (citing *Wolff*, 418 U.S. at 563-67, and *Hill*,

472 U.S. at 455); *Kalwasinski v. Morse*, 201 F.3d 103, 108 (2d

Cir. 1999); *see also Johnson v. Goord*, 305 F. App'x 815, 817 (2d

Cir. 2009) (citing *Sira* and *Kalwasinski*).  Vaughn contends his

tier hearing denied him due process under the Fourteenth

Amendment because Vaughn was not afforded a reasonable

opportunity to call witnesses, HO Prosser was not fair and

impartial, and HO Prosser's disposition was not supported by some

evidence.

**A.    Reasonable Opportunity to Call Witnesses**

          Vaughn argues he was denied due process when HO Prosser

refuse to allow Vaughn to call two witnesses, Robinson and

Freeman, during the tier hearing.  Vaughn contends Robinson and

Freeman, if called, would have testified that defendant Abbis had

threatened them with, *inter alia*, placement in the Special

Housing Unit if they did not implicate Vaughn in causing Deleon's

injuries.  At the tier hearing, HO Prosser denied without comment

Vaughn's request to allow Robinson and Freeman to testify.

                              -10-

"A hearing officer does not violate due process by excluding irrelevant or unnecessary testimony." *Kalwasinski*, 201 F.3d at 109.  It is clear that Robinson and Freeman's testimony was irrelevant to the tier hearing.  Vaughn desired to call Robinson and Freeman so that they could testify regarding pressure allegedly asserted against them by Abbis to implicate Vaughn for attacking Deleon.  Robinson and Freeman's testimony would not have been relevant because neither of them witnessed the circumstances surrounding how Deleon incurred his injuries -- neither could confirm or deny, based on their observations, whether Vaughn had actually attacked Deleon.  Therefore, Robinson and Freeman's testimony was irrelevant to the tier hearing and HO Prosser properly denied allowing these witnesses to testify.

Although, HO Prosser did not allow Vaughn to call Robinson and Freeman as witnesses, HO Prosser did allow Vaughn to call other witnesses (Dumas and Mendoza) who testified that Vaughn did not attack Deleon.  Because HO Prosser permitted Vaughn to call these witnesses, Vaughn was afforded a reasonable opportunity to call witnesses at the tier hearing and his due process rights were not violated in this respect.

-11-

**B.    Impartial Hearing Officer**

Vaughn also complains that his due process rights were violated because HO Prosser was not an impartial hearing officer. In support of this theory, Vaughn contends the following information supports a conclusion of HO Prosser's bias:

1.    Both HO Prosser and Abbis worked together in the same building and were friends;
2.    Abbis was HO Prosser's boss;
3.    On at least two occasions, Vaughn saw HO Prosser and Abbis speaking in the tier hearing room without Vaughn being present;
4.    During Abbis' testimony at the tier hearing, HO Prosser told Vaughn "[W]e're gonna run the hearing;"
5.    HO Prosser adjourned the tier hearing for approximately forty minutes[4] after Vaughn made his closing statement and prior to HO Prosser stating the disposition, when (according to Vaughn) HO Prosser should have only adjourned the hearing for ten to twenty minutes at most; and
6.    HO Prosser based his disposition, at least in part, on accountability records from the prison law library that disclosed Vaughn had not been in the prison library, or at least had not signed the accountability

_____

[4] In his brief on remand, Vaughn states that this adjournment lasted over one hour, but the tier hearing transcript reflects HO Prosser adjourned the hearing at 1:40 p.m. and reconvened at 2:18 p.m.  Tier Hearing Transcript, Filing No. 25-9, at 21.  The Court finds this factual discrepancy is immaterial.

-12-

> sheet showing he was in the prison
> library, at the time of the Deleon
> incident.

Even assuming for the purposes of evaluating this summary judgment motion that all these circumstances are true, Vaughn still cannot sustain a claim for a due process violation because of a hearing officer's bias.  The impartiality expected of prison hearing officials does not rise to the level expected of judges generally.  *Francis v. Coughlin*, 891 F.2d 43, 46 (2d Cir. 1989).  "Because of the special characteristics of the prison environment, it is permissible for the impartiality of [prison hearing officials] to be encumbered by various conflicts of interest that, in other contexts, would be adjudged of sufficient magnitude to violate due process."  *Francis*, 891 F.2d at 46 (citing *Cleavinger v. Saxner*, 474 U.S. 193, 203-04 (1985)).  However, "it is axiomatic that a prison disciplinary hearing in which the result is arbitrarily and adversely predetermined violates this right."  *Id.*

While HO Prosser may have operated under a conflict of interest while conducting Vaughn's tier hearing, the Court finds the tier hearing's disposition was not arbitrary or adversely predetermined.  Therefore, the tier hearing did not violate Vaughn's due process rights in this respect.  With regard to HO

-13-

Prosser's actions at the end of the tier hearing, in which he adjourned the hearing to review the accountability logs in the prison law library prior to rendering his disposition, these actions, at worst, were harmless error and do not implicate a due process violation for bias.  *See Powell v. Coughlin*, 953 F.2d 744, 750-51 (2d Cir. 1991) (doubting any error occurs when a hearing officer views records outside the presence of an inmate and stating "[w]hether a hearing officer views a prison record inside or outside of the hearing room does not implicate the values to be protected by the *Wolff* requirement of an impartial hearing officer").  Thus, HO Prosser was sufficiently impartial to conduct the tier hearing.

**C.   Some Evidence Supporting the Disposition**

       Finally, Vaughn argues the disposition of his tier hearing violated the Fourteenth Amendment's due process clause because the disposition was not supported by some evidence.  In sum, Vaughn attempts to discredit all of the sources of information HO Prosser relied upon in making his disposition and emphasizes the evidence at his tier hearing that tends to contradict the disposition.

       The some evidence standard, detailed in *Superintendent v. Hill*, 472 U.S. 445 (1985), is satisfied if "'there is *any*

-14-

evidence in the record that supports' the disciplinary ruling."
*Sira*, 380 F.3d at 69 (quoting *Friedl v. City of New York*, 210
F.3d 79, 85 (2d Cir. 2000)).  "[P]rison administrators must often
act swiftly on the basis of evidence that might be insufficient
in less exigent circumstances."  *Hill*, 472 U.S. at 456 (requiring
only a "modicum of evidence" to support a hearing decision).

Upon making his statement of disposition, HO Prosser
stated the following information supported his disposition:  the
confidential informants' statements to Abbis, Abbis' testimony,
dorm sign-out sheets showing the confidential informants were
present when the incident occurred, testimony from Nichols
stating Vaughn was not in the law library at the time of the
incident, law library logs showing Vaughn was not in the library
at the time of the attack, documents from the housing unit where
the incident occurred that indicated Vaughn was present in the
housing unit at the time of the incident, and medical testimony
from a prison nurse regarding the extent of Deleon's injuries.
The Court finds this information fulfills the lenient some
evidence standard imposed in *Hill*.  Therefore, Vaughn's due
process rights were not violated in this respect.

**V.  CONCLUSION**

-15-

For the reasons discussed above, the circumstances of Vaughn's tier hearing did not violate the Fourteenth Amendment's due process clause.  No genuine issue of material fact exists, so summary judgment in the defendants' favor is appropriate on this issue.  A separate order will be entered in accordance with this memorandum opinion.

DATED this 24th day of February, 2010.

BY THE COURT:

/s/ Lyle E. Strom

_____
LYLE E. STROM, Senior Judge
United States District Court